Thomas L. Hancock Chief of Accounting Colorado Department of Health 4210 East 11th Avenue Denver, CO 80220
Dear Mr. Hancock:
This letter is in response to your request of October 18, 1983 for advice as to whether the federal Davis-Bacon Act is applicable to the uranium mill tailings removal construction contracts in the Grand Junction area.
QUESTION PRESENTED AND CONCLUSION
The question presented is whether the federal Davis-Bacon Act, 40 U.S.C. § 276a — 276a-7, is applicable to the uranium mill tailings removal contracts being performed in the Grand Junction area under Act of June 16, 1972, Pub.L. 92-314,86 Stat. 220, as amended by Act of February 21, 1978, Pub.L.95-236, 92 Stat. 38.
 The Davis-Bacon Act does apply to the remedial action contracts, even if the individual building is not owned by a public entity.
ANALYSIS
Section 276a(a) of the Davis-Bacon Act provides that mechanics and laborers employed at a site where construction, alteration, or repair is being done to "public buildings or public works" must be paid at least the prevailing wage of similar mechanics and laborers in that local area. This requirement applies, however, only to contracts in excess of $2,000 to which the United States is a party and which are being conducted within the geographical limits of the States.[1]
The Grand Junction remedial action program, conducted pursuant to Act of June 16, 1972, Pub.L. 92-314, 86 Stat. 220, as amended by Act of February 21, 1978, Pub.L. 95-236, 92 Stat. 38, provides for removal of uranium mill tailings which were used as a construction related material for various types of structures in the area of Grand Junction, Colorado. The danger involved is exposure of individuals to radioactive radon gas emitted from the tailings, which can build up inside those structures in which uranium mill tailings were used as concrete mix or fill dirt. The program provides for removal of tailings with 75 percent federal and 25 percent state funding. The subject buildings are both public and private: residences, schools, churches, a post office, commercial businesses, etc. Two methods of remedial action are employed. The vast majority of projects involve demolition and removal of a concrete floor slab, excavation of tailings, backfilling with clean fill and replacing the concrete floor slab. Quite often, removal of exterior tailings adjacent to the buildings is also involved. A limited number of the projects involve application of epoxy sealant to concrete surfaces to seal out the radon gas generated by the tailings (sealant is used primarily when the tailings have been used in the concrete and when removal of the concrete is economically or structurally prohibitive).
There is no doubt that the United States is a party to the contracts for remedial action in Grand Junction (Department of Energy currently executes the contracts for the United States.); that the contracts are performed within the geographical limits of the States (All are in Colorado.); or that they require the employment of mechanics and/or laborers. Further, there is no doubt that the work being done falls within the very broad definitions of "construction" and "repair" as set forth in regulations promulgated pursuant to the Act.[2]
Therefore, the only issue which remains is whether the remedial action on the various types of public and private buildings can be classified as construction or repair of a "public building" or "public work" as those terms are defined for the purpose of the Davis-Bacon Act.
Regulations have been adopted by the United States Department of Labor to implement the Davis-Bacon Act and other labor-related federal statutes. 29 C.F.R. section 5.2(k) defines "public building" and "public work" as follows:
 (k) The term "public building" or "public work" includes building or work, the construction, prosecution, completion, or repair of which, as defined above, is carried on directly by authority of or with funds of a Federal agency to serve the interest of the general public regardless of whether title thereof is in a Federal agency.
It is clear from the language of the statute and the regulatory definition quoted that the United States Post Office, school buildings, and other public facilities "repaired" as part of the Grand Junction remedial action program are subject to the Davis-Bacon Act. But as the regulation expressly states, a building need not necessarily be publicly owned to be subject to the regulations.
The regulations promulgated under the various federal statutes (including the Davis-Bacon Act) provide that private buildings are subject to the regulatory requirements when federal funding is used to accomplish the remedial action. The applicable regulations at 29 C.F.R. section 5.5(a) provide in pertinent part:
 (a) The Agency head shall cause or require the contracting officer to insert in full in any contract in excess of $2,000 which is entered into for the actual construction, alteration and/or repair, including painting and decorating, of a public building or public work, or building or work financed in whole or in part from Federal funds or in accordance with guarantees of a Federal agency or financed from funds obtained by pledge of any contract of a Federal agency to make a loan, grant or annual contribution (except where a different meaning is expressly indicated), and which is subject to the labor standards provisions of any of the acts listed in § 5.1, the following clauses. . . .[3]
(emphasis added). 29 C.F.R. section 5.2(i) defines "building" and "work" as follows:
 (i) The terms "building" or "work" generally include construction activity as distinguished from manufacturing, furnishing of materials, or servicing and maintenance work. The terms include without limitations, buildings, structures, and improvements of all types, such as bridges, dams, plants, highways, parkways, streets, subways, tunnels, sewers, mains, power lines, pumping stations, heavy generators, railways, airports, terminals, docks, piers, wharves, ways, lighthouses, buoys, jetties, breakwaters, levees, canals, dredging, shoring, rehabilitation and reactivation of plants, scaffolding, drilling, blasting, excavating, clearing, and landscaping. The manufacture or furnishing of materials, articles, supplies or equipment (whether or not a Federal or State agency acquires title to such materials, articles, supplies, or equipment during the course of the manufacture or furnishing, or owns the materials from which they are manufactured or furnished) is not a "building" or "work" within the meaning of the regulations in this part unless conducted in connection with and at the site of such a building or work as is described in the foregoing sentence, or under the United States Housing Act of 1937 and the Housing Act of 1949 in the construction or development of the project.
Clearly private residences, churches, business establishments, and a wide range of other structures — both public and private — fall within the definition of "building" or "work." Thus, it is clear that so long as federal funding is being used for the remedial action on any building, the contract is subject to the regulations implementing the Davis-Bacon Act. As all the remedial action contracts in question are being accomplished with 75 percent federal funding, it is clear that all private buildings involved are subject to the regulations.[4]
In short, although the language of the Davis-Bacon Act itself does not expressly include privately-owned buildings within the scope of its provisions, regulations adopted by the United States Department of Labor pursuant to that Act andothers do require all federal agencies to incorporate payment of prevailing wage requirements into contracts on projects funded with federal dollars. It does not appear such inclusion necessarily follows from the Davis-Bacon Act, but such is the current application.
SUMMARY
The federal Davis-Bacon Act requirement for payment of prevailing wage does apply to the Grand Junction remedial action projects conducted pursuant to Pub.L. 92-314 by means of the Department of Labor regulations adopted pursuant to that Act and other federal statutes.
Very truly yours,
 DUANE WOODARD Attorney General
MINIMUM WAGE PUBLIC BUILDINGS HEALTH
40 U.S.C. § 276a
C.R.S. 1973, 8-16-101
HEALTH, DEPT. OF
Davis-Bacon minimum (prevailing) wage requirements apply to Grand Junction uranium mill tailings remedial action contracts.
[1] 276a. Rate of wages for laborers and mechanics
 (a) The advertised specifications for every contract in excess of $2,000, to which the United States or the District of Columbia is a party, for construction, alteration, and/or repair, including painting and decorating, of public buildings or public works of the United States
or the District of Columbia within the geographical limits of the States of the Union, or the District of Columbia, and which requires or involves the employment of mechanics and/or laborers shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics which shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the city, town, village, or other civil subdivision of the State, in which the work is to be performed, or in the District of Columbia if the work is to be performed there; and every contract based upon these specifications shall contain a stipulation that the contractor or his subcontractor shall pay all mechanics and laborers employed directly upon the site of the work, unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account, the full amounts accrued at time of payment, computed at wage rates not less than those stated in the advertised specifications, regardless of any contractual relationship which may be alleged to exist between the contractor or subcontractor and such laborers and mechanics, and that the scale of wages to be paid shall be posted by the contractor in a prominent and easily accessible place at the site of the work; and the further stipulation that there may be withheld from the contractor so much of accrued payments as may be considered necessary by the contracting officer to pay to laborers and mechanics employed by the contractor or any subcontractor on the work the difference between the rates of wages required by the contract to be paid laborers and mechanics on the work and the rates of wages received by such laborers and mechanics and not refunded to the contractor, subcontractors, or their agents.
(emphasis added).
[2] 29 C.F.R. section 5.2(j) provides:
 (j) The terms "construction", "prosecution", "completion", or "repair" mean all types of work done on a particular building or work at the site thereof (or, under the United States Housing Act of 1937 and the Housing Act of 1949), all work done in the construction or development of the project, including without limitation, altering, remodeling, installation (where appropriate) on the site of the work of items fabricated off-site, painting and decorating, the transporting of materials and supplies to or from the building or work by the employees of the construction contractor or construction subcontractor, and the manufacturing or furnishing
of materials, articles, supplies or equipment on the site of the building or work (or, under the United States Housing Act of 1937 and the Housing Act of 1949, in the construction or development of the project), by persons employed by the contractor or subcontractor.
[3] The clauses which follow concern payment of minimum wages, withholding, record keeping, contract termination, disputes, and related matters. The regulation literally requires the federal agency to insure inclusion in its contracts of express provisions exacting compliance with the Davis-Bacon Act. Note that the state's contract with the Department of Energy (originally the Atomic Energy Commission) does not expressly require compliance with Davis-Bacon (contract No. AT(05-1)-1621, as modified). However, the performance contracts for the program (which were approved by the federal agency) at article IX (concerning payment of prevailing wage) require compliance with C.R.S. 1973, 8-16-101 — which is a state "equivalent" of the Davis-Bacon Act (requires payment of the prevailing rates to laborers and mechanics on contracts for "construction, alteration, or repair of any building or other public work" and applies to public work contracts in excess of $5,000, excepting highway and bridge work).
[4] That privately-owned buildings repaired with federal funds are subject to the regulations is further supported by the definition of "building or work financed in whole or in part by loans or grants from the United States" at29 C.F.R. section 3.2(d) (incorporated into part 5 by section 5.5(8)):
 (d) The term "building or work financed in whole or in part by loans or grants from the United States" includes building or work for whose construction, prosecution, completion, or repair, as defined above, payment or part payment is made directly or indirectly from funds provided by loans or grants by a Federal agency. The term includes building or work for which the Federal assistance granted is in the form of loan guarantees or insurance.